IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MICHAEL D. NORTHAM,<br><br>     Plaintiff,<br><br>vs.<br><br>LELAND DUDEK, Acting Commissioner of Social Security Administration[1],<br><br>     Defendant. | CV 23-132-BLG-TJC<br><br>**ORDER** |

  Plaintiff Michael D. Northam ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of his claim for child's disability insurance benefits and supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. (Doc. 2.) The Commissioner subsequently filed the Administrative Record ("A.R."). (Doc. 8.)

  Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial of disability benefits and remand for an award of disability benefits, or alternatively for further administrative

---

[1] Leland Dudek is substituted pursuant to Federal Rule of Civil Procedure 25(d).

1

proceedings. (Doc. 10.) The motion is fully briefed and ripe for the Court's review. (Docs. 15, 18.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds the ALJ's decision should be **AFFIRMED**.

## I.     PROCEDURAL BACKGROUND

Plaintiff filed an application for child's disability insurance benefits and supplemental security income on March 26, 2021, with an alleged onset date of April 16, 2018. (A.R. 212-235.) A hearing was held before Administrative Law Judge John Rolph (the "ALJ") on February 1, 2023. (A.R. 41-79.) On February 17, 2023, the ALJ issued a written decision finding Plaintiff not disabled. (A.R. 17-35.) Plaintiff requested review of the decision, and the Appeals Council denied Plaintiff's request. (A.R. 1-6.) Thereafter, Plaintiff filed the instant action. (Doc. 2.)

## II.    LEGAL STANDARDS

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). *See*

*also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to

apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

    **B.    Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) the claimant suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id*. Child's disability insurance benefits apply if the claimant is 18 years old or older and has a disability that began before the claimant attained age 22. 20 C.F.R. § 404.350(a)(5).

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

    1.    Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social

      Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

      Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

/ / /

## III.   THE ALJ'S FINDINGS

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim.  First, the ALJ found Plaintiff had not attained age 22 as of the alleged onset date of April 16, 2018.  (A.R. 20.)  Second, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (*Id.*) Third, the ALJ found that Plaintiff had the following medically determinable severe impairments: "1) morbid obesity; 2) lumbar spine problems with chronic low back pain; and 3) mental impairments variously diagnosed as: learning disability (borderline intellectual functioning), unspecified depressive disorder/depression/recurrent depressive disorder/major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder (PTSD), nightmares, and avoidant personality traits."  (*Id.*)

Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any one of the impairments in the Listing of Impairments.  (A.R. 21-24.)  Fifth, the ALJ determined that Plaintiff has the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently.  The claimant can stand and/or walk two hours in an eight-hour day.  The claimant can sit six hours in an eight-hour day.  The claimant requires a sit/stand option at 30 to 45-minute intervals for 3 to 5 minutes at a time, during which periods he may remain on task.  The claimant may never climb ladders, ropes, and scaffolds.   The  claimant  may  occasionally  climb  ramps  and  stairs,

stoop, kneel, crouch, and crawl. With the lower extremities, the claimant may occasionally push, pull, and engage in in foot pedal operations. The claimant must avoid more than occasionally exposure to extreme cold, heat, and vibration. The claimant should avoid all exposure to hazards such as dangerous moving machinery and unsecured heights. The claimant can learn, remember, and perform simple, routine, and repetitive work tasks, involving short and simple one and two-step work instructions, which are performed in a routine, predictable, and low stress work environment (defined as one in which there are no rapid production pace work tasks or strict quota requirements, few workplace changes and nor mor than occasional direct personal supervision). The claimant can attend, concentrate, and maintain pace for simple, routine, and repetitive work tasks for two hours at a time with normal breaks. The claimant may have occasional contact with supervisors. The claimant may have occasional and superficial contact with coworkers and the public.

(A.R. 24.)

The ALJ next found that Plaintiff had no past relevant work, but could perform other work in the national economy, such as assembler, sorter, packager, stuffer, and table worker. (A.R. 33-34.) Thus, the ALJ found that Plaintiff was not disabled. (A.R. 34.)

## IV.   DISCUSSION

Plaintiff presents the following issues for review: (1) whether the ALJ properly evaluated his subjective symptom testimony; (2) whether the ALJ properly considered the consistency and supportability of medical findings; and (3) whether all relevant limitations were properly incorporated into the vocational expert's hypothetical. The Court will address each in turn.

/ / /

7

## A. Evaluation of Subjective Symptom Testimony

Plaintiff argues that the ALJ improperly discounted his subjective symptom testimony regarding his limitations from morbid obesity, specifically the use of his hands and the need for use of a cane, and limitations from his 70 IQ and other mental limitations. The Commissioner argues that the ALJ reasonably evaluated Plaintiff's subjective complaints.

A claimant's testimony is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ provides "specific, clear and convincing reasons" for doing so. *Id.* "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834).

To assess a claimant's subjective symptom testimony, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). An ALJ may also take the lack of objective medical evidence into consideration. *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms. Therefore, the ALJ was required to cite specific, clear, and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of his symptoms. The Court finds the ALJ did so.

First, regarding Plaintiff's statements about the intensity, persistence and limiting effects of his morbid obesity, the ALJ found they were not entirely consistent with the objective medical evidence. (A.R. 26.) The ALJ found Plaintiff's "physical functioning remained largely intact despite his obesity." (*Id.*) The ALJ observed that physical examinations generally confirmed normal gait, negative straight leg raise findings bilaterally, and that testing to isolate sources of lower extremity pain, such as FABER's and FADIR's tests, were negative. (*Id.*) The ALJ further noted that Plaintiff reported his back pain greatly improved after

receiving medication, and that he had not received further medical treatment or imaging for physical symptoms since March 2022. (A.R. 27.) In addition, with regard to Plaintiff's upper extremities – which would include his hands – the ALJ found examinations confirmed intact deep tendon reflexes in the upper extremities, full strength (five of five) and intact sensory function. (A.R. 26.) There is adequate support for the ALJ's conclusions in the record. (*See* A.R. 414 (noting "Normal gait"); 424 (same); 430 (noting normal gait, negative FADIR and FABER testing, symmetric upper and lower extremity deep tendon reflexes, 5/5 strength in upper and lower extremities, and intact sensory function); 456 (noting normal gait, and normal muscle strength and tone); 522-23 (stating low back pain improved significantly when taking gabapentin, and noting normal gait and normal upper and lower extremity reflexes and strength); 527 (noting normal gait, and determined to hold off on any imaging because Plaintiff's back pain had improved).)

    The ALJ further indicated that Plaintiff's statements about his use of cane was inconsistent with the medical record and his prior representations. (A.R. 27.) The ALJ noted that Plaintiff testified he used a cane all the time, "24 hours a day." (*Id.*) The ALJ observed, however, that examinations generally noted normal gait, with no mention of an assistive device. (*Id.*) The ALJ further pointed to evidence that Plaintiff had denied using a cane in May 2022. (*Id.*) The ALJ, therefore, concluded these inconsistencies suggested Plaintiff had a greater physical capacity

than he alleged. (*Id.*) The ALJ's findings are supported by the evidence in the record. (S*ee* A.R. 414 (noting "normal gait"); 424 (same); 430 (same); 456 (same); 523 (same); 527 (same); 555 (Plaintiff reported he "used to use a cane but 'that is not OK at his age.'").)

The ALJ also found Plaintiff's statements about his limitations due to his intellectual impairments were not entirely consistent with the objective evidence. (A.R. 27-28.) The ALJ acknowledged that intellectual testing in October 2021 placed Plaintiff at a borderline level of intellectual functioning. (A.R. 27.) The ALJ determined, however, that the testing evidence was not fully reliable when closely evaluated. (*Id.*) The ALJ noted that the psychologist who administered the intellectual testing opined it was clear Plaintiff had the potential to perform better, made variable effort, and presented with fairly good diction. (*Id.*) The ALJ's conclusions are supported by the evidence in the record. (*See* A.R. 519 (noting testing suggested borderline intellectual functioning, but "it seemed clear that there was a potential to do better").)

The ALJ additionally acknowledged that Plaintiff's school records noted a history of special education services. (*Id.*) Nevertheless, the ALJ found Plaintiff's education records also indicated he had a greater cognitive capacity than alleged. (*Id.*) For example, the ALJ observed that in 2018, an English teacher stated Plaintiff had the skills to be in a general education English class. (*Id.*) Other

comments included that Plaintiff had the ability to succeed in his classes, completed his classwork and turned it in, arrived at class on time, and worked independently. (*Id.*) Lastly, the ALJ noted that Plaintiff pursued a standard high school diploma, rather than an adjusted diploma. (A.R. 28.) Again, the ALJ's conclusions are supported by the evidence in the record. (*See* A.R. 380-83 (school records noting Plaintiff's eligibility for special education); 386 ("[Plaintiff's] English teacher believes that he has the skills to be in a general education English class."); 387 (teacher comments that Plaintiff "has the ability to succeed in his classes," "completes his classwork in most classes and gets it turned in," "always is able to finish class work on time and correctly," "has the ability to stay on task," and "can work independently").)

With regard to Plaintiff's psychological impairments, the ALJ determined the record did not support Plaintiff's claimed extreme mental symptoms or mood dysfunction. (A.R. 28.) The ALJ noted that results of psychological screening tests conducted in 2019 showed questionable validity, and indicated Plaintiff potentially exaggerated his reported symptoms. (*Id.*) The ALJ further observed that objective mental status findings from the medical records noted cooperative demeanor, good eye contact, good insight and reflection, and therapy notes stated Plaintiff had at most mild difficulties with meeting his basic needs, self-care, and overall level of mental and emotional functioning. (*Id.*) Moreover, the ALJ noted

Plaintiff's treatment for his mental health had been generally conservative. (*Id.*) With the exception of a single emergency department visit for suicidal ideation, his treatment consisted of medications and counseling, and Plaintiff reported improvement with those modalities. (*Id.*)

There is ample support in the record to support the ALJ's findings. (*See* A.R. 559 (psychological evaluation stating results of two tests showed "questionable validity" due to Plaintiff "reporting a high number of psychiatric symptoms" which suggested he was exaggerating the reports of his problems to some degree); 397 (therapy note reporting Plaintiff said "I'm doing good mentally"); 424 (noting Plaintiff "does feel little bit better and states the Prozac seems to be working"); 431 (noting that since starting psychotropic medication after his ER visit, "he feels more calm and logical overall"); 501 (therapy note stating Plaintiff's "overall level of mental and emotional functioning suggests mild difficulty and/or impairment" and "mild difficulty in taking care of basic needs and self-care"); 502-515 (same); 566 (same); 569-570 (same); 507 ("It appears that he has improved. He is not reporting that his depression is bad."); 512 ("he states that he is no longer depressed"); 522 ("Patient tells me that his depression and anxiety are doing quite well[.]"); 526 ("Patient tells me that overall he is doing pretty well. . . . He denied any anxiety or feeling overwhelmed."); 527 (assessing "Mild major depressive disorder that appears in remission on fluoxetine 40 mg."); 562-565

13

(therapy notes stating Plaintiff's "overall level of mental and emotional functioning suggests no difficulty and/or impairment" and "no difficulty in taking care of basic needs"); 567-68 (same); 571-572 (same).)

Plaintiff argues a different interpretation should be drawn from the medical records. But the Court may not substitute its judgment for that of the ALJ. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Rather, it "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039-1040 (9th Cir. 1995).

The Court therefore finds the ALJ's evaluation of Plaintiff's testimony is properly supported by specific, clear and convincing reasons.

### B.  Consideration of Medical Opinions

Plaintiff next argues the ALJ failed to properly consider the opinions of Plaintiff's counselor, Teresa Donato, LCPC, and psychological examiner, Bruce Chessen, Ph.D. The Commissioner counters that the ALJ reasonably assessed both opinions.

Because Plaintiff applied for benefits after March 27, 2017, the ALJ was required to consider the medical evidence under the revised regulations governing the evaluation of medical opinion evidence. 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, the ALJ "will not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s) . . . ." 20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Rather, the ALJ is directed to consider medical opinions according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors such as the medial source's familiarity with other evidence in the claim or understanding of the disability program requirements.  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  The two most important factors are supportability and consistency, and the ALJ must explain how those factors were considered in the decision.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ is generally not required to explain how the remaining factors were considered, except when deciding among differing, yet equally persuasive opinions or findings on the same issue.  *Id.*  Under the new regulations the "ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).

      a.    *Teresa Donato, LCPC*

Teresa Donato, LCPC, provided a medical opinion letter, stating Plaintiff "cannot work due to his mental and physical disabilities."  (A.R. 500.)  She stated Plaintiff was diagnosed with PTSD and major depressive disorder.  (*Id.*)  She also noted Plaintiff "may struggle with borderline intellectual functioning, but this is not conclusive."  (*Id.*)  Ms. Donato opined that Plaintiff is "severely limited" with

respect to most vocational tasks including understanding and carrying out instructions, remembering, maintaining concentration, and responding appropriately to supervisors or coworkers. (*Id.*) She stated he would not be able to handle the pressure of working or tolerating working environments. (*Id.*) She also expressed an opinion that Plaintiff's physical health impacts his ability to work. (*Id.*) Ms. Donato concluded that Plaintiff's "physical and mental health are debilitating enough that he cannot live independently or be capable of working." (*Id.*)

      The ALJ considered Ms. Donato's opinion, but found it was "not persuasive." (A.R. 30-31.) In doing so, the ALJ substantively addressed the supportability and consistency factors. The ALJ explained Ms. Donato's opinion about Plaintiff's physical limitations was not supported by her clinical notes and was inconsistent with the evidence of normal gait, reflexes, sensory function and motor function noted throughout the medical record. (A.R. 31.) The ALJ also found her opinion about Plaintiff's physical limitations was not persuasive because it was outside the scope of her practice. (A.R. 30-31.) The ALJ's determination is supported by the medical evidence (A.R. 414, 424, 430, 456, 522-23, 527) and is a proper basis for discounting a medical opinion. 20 C.F.R. §§ 404.1520c(c)(3)(iii), (4); 416.920c(c)(3)(iii), (4).

The ALJ also discounted Ms. Donato's opinions about Plaintiff's mental limitations because they were inconsistent with her treatment notes, which consistently documented that Plaintiff had no more than mild impairment in overall mental and emotional functioning. (A.R. 30.) An ALJ may discount medical opinions that are inconsistent with or unsupported by the medical provider's own clinical findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ's finding is adequately supported by the record. (*See* A.R. 501 (therapy note stating Plaintiff's "overall level of mental and emotional functioning suggests mild difficulty and/or impairment" and "mild difficulty in taking care of basic needs and self-care"); 502-515 (same); 566 (same); 569-570 (same); 562-565 (therapy notes stating Plaintiff's "overall level of mental and emotional functioning suggests no difficulty and/or impairment" and "no difficulty in taking care of basic needs"); 567-68 (same); 571-572 (same).)

      **b.**    ***Bruce Chessen, Ph.D.***

With respect to Bruce Chessen, Ph. D, the ALJ stated that he considered Dr. Chessen's psychological testing report, but because it was not a medical opinion, the ALJ did not evaluate its persuasiveness. (A.R. 31.) The regulations draw a distinction between "medical opinions" and "other medical evidence." A "medical opinion" is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related

limitations or restrictions" in the ability to perform work. 20 C.F.R. § 404.1513(a)(2). In contrast, "other medical evidence" is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).

The ALJ is required to evaluate the persuasiveness of "medical opinions." 20 C.F.R. § 404.1520c(b). But the ALJ is not required to do the same for "other medical evidence." *See Cheryl M. v. O'Malley*, 2024 WL 1349041, *4 (S.D. Cal. March 29, 2024) (finding doctor's report was not a medical opinion, and therefore, the ALJ did not have to evaluate its persuasiveness); *Joseph B. v. Kijakazi*, 2022 WL 2967565, *10 (D. Idaho July 26, 2022) ("The ALJ is not expressly required to evaluate 'objective medical evidence' or 'other medical evidence' under the persuasiveness factors in 20 C.F.R. § 404.1520c.").

Here, Dr. Chessen's report falls into the category of "other medical evidence" because it does not opine on Plaintiff's specific limitations or on what Plaintiff can still do despite his impairments. The ALJ, therefore, correctly determined that he was not required to evaluate the persuasiveness of Dr. Chessen's report. *See Stacie M. v. Comm'r*, 2024 WL 3272981, *6-7 (D. Or. July 1, 2024) (holding ALJ was not required to evaluate mental health assessment for

supportability and consistency because it was not a "medical opinion" under the regulations); *Sandra G. v. Kijakazi*, 2023 WL 4760619, *9 (D. Or. July 26, 2023) (finding that because psychodiagnostic testing report "did not comment on specific work related abilities and/or limitations," the report was "'other medical evidence' and the ALJ did not commit legal error by failing to articulate whether it was persuasive nor by failing to address the supportability or consistency of the report.").

Accordingly, the Court finds the ALJ did not err in considering the medical opinion evidence.

### C.   Consideration of Treatment/Vocational Expert Hypothetical

Finally, Plaintiff argues the ALJ failed to incorporate all relevant limitations into the hypothetical questions posed to the vocational expert. The Commissioner contends the ALJ's hypothetical questions properly reflected all of the limitations the ALJ found supported by the overall record.

Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d 747, 756 (9th Cir. 189) (quoting *Sample*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the

vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422

As discussed above, the Court has determined the ALJ adequately supported his reasons for discounting Plaintiff's testimony and the opinions of the medical providers. Accordingly, the hypotheticals the ALJ relied on properly accounted for all of Plaintiff's limitations that the ALJ found to be supported by evidence in the record.

Therefore, the Court finds the ALJ's determination at step five is supported by substantial evidence.

## V.   CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**, and Plaintiff's motion for summary judgment (Doc. 10) is **DENIED**.

DATED this 11th day of March, 2025.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge